Jewell **JACKSON**, Troy Jackson, Vesta
Jackson and Charles T. Crewell,
Plaintiffs in Error,

v.

**E. H. ALLEN**, Defendant in Error.
No. 36473.

Supreme Court of Oklahoma.
May 10, 1955.

Max Darks, Holdenville, for plaintiffs in
error.

Stamper & Dudley, Antlers, for defendant
in error.

BLACKBIRD, Justice.

This action was commenced by defendant in error, as plaintiff, against plaintiffs in error, as defendants, to quiet his title to a certain parcel of real estate (among others not involved in this appeal) sometimes described as the W½ of lot 4 of Section 31, Township 2 North, Range 19 East, Pushmataha County, Oklahoma.

The parties will hereinafter be referred to as they appeared in the trial court.

Plaintiff's title is based upon certain tax sale proceedings hereinafter described, while defendants deraign their title through their ancestor, R. F. Jackson, to whom the land was purportedly conveyed by Tom and Ada Carr, who owned said real estate in 1926 and 1927, previous to its sale to the county at the annual 1927 tax sale for ad valorem taxes, apparently for the year 1926. The Carr's deed to R. F. Jackson was executed and delivered in December, 1929, but the land was resold the following April, 1930, to the county, the re-sale tax deed executed pursuant thereto being executed and delivered May 15, 1930.

R. F. Jackson died intestate, apparently at some time during one of the years following 1930, leaving the defendants as his heirs. In 1939 the county treasurer accepted a certain sum from one of said heirs, Jewell Jackson (who for many years has resided near Wewoka, in Seminole County) as payment in full of the taxes for the years 1926, 1927 and 1928. The land was not assessed for taxation for the year 1929. In 1947, the county treasurer again accepted a certain sum from Jewell Jackson as payment for the taxes for the years 1930 and 1932, both inclusive, notwithstanding the fact that two years previously, in 1945, plaintiff's immediate predecessor in title, his brother, J. L. Allen, had purchased it from the county, obtaining his title by a County Deed (of Property Acquired At Resale) dated October 1, 1945. This deed was filed of record on October 25, 1945.

In 1946, J. L. Allen conveyed the real estate to the plaintiff, whereupon the latter immediately went into possession, and that possession has continued uninterrupted to and through July 1, 1953, and presumably to the present. Early in his possession, he started making repairs and/or additions to the fence and house on the property, and has built a barn and corral thereon.

At the trial it was agreed that plaintiff and his predecessor have paid the taxes on the property for each and every year since they obtained their title from the county in 1945. It was stipulated that the county treasurer's acceptance of tax payments from the defendant, Jewell Jackson, and/or his predecessor, R. F. Jackson, for the years subsequent to and beginning with the year 1934, and prior to 1946, (while the record title to the property was in the county by reason of its re-sale deed) and for the year 1946 to the year this action was commenced, (during which said title has been in the name of plaintiff and his predecessor, J. L. Allen, who also paid taxes on the property for those years) resulted in a duplication of payments due to the property's double assessment, which, in turn, was the result of its description on the tax rolls, and in defendants' chain of title, as: "The West 18.23 acres of Lot 4", and, on said rolls, and in plaintiff's chain of title, as: "The W2 SW¼ SW¼."

Defendants made no effort at the trial to establish any fatal defect in plaintiff's title or the tax sale proceedings upon which it was based. Their sole reliance being placed (as their position was stated by their attorney), upon the fact that they and their predecessor had paid on the property "all taxes from 1926 through 1952", and that plaintiff's possession for the almost seven years subsequent to the recording of the deed of his predecessor from the county, was not "adverse."

In support of the latter contention, the defendant, Jewell Jackson, testified, in substance, that plaintiff came to his house in Seminole County on an occasion in 1947, and informed him that he had a tax deed on the property and asked him what he thought about it, and before the end of their conversation, agreed to pay said defendant $500.00 for a deed to the property. In an apparent effort to show that plaintiff led him to believe he was not holding the prop-

erty adverse to him, Jackson also testified he told plaintiff he was glad he was "on" the property and working on its fencing as "people had been carrying it off." Said defendant also testified, plaintiff "promised to protect" the property "and see that no more was carried off." He further testified that when he later "made the deed and took it to him" plaintiff said he had talked to an attorney and "would rather wait", and that the two thereupon went together to an attorney's office in Antlers, and, after their consultation with said attorney, plaintiff said: "He would like to wait a while and let me know." Upon further questioning, this witness revealed that plaintiff never, subsequent to that occasion, informed him whether "he was or was not going to buy the land." Plaintiff's counsel objected to this line of questioning on the theory that the described contacts plaintiff had with said defendant were merely for the purpose of negotiating a settlement that would make his title merchantable, and that such testimony would not tend to show that his possession was not "adverse" to said defendant, or prove any other material issue in the case.

■ After the trial the court entered a judgment sustaining plaintiff's position, finding "the issues of fact and law" in his favor and specifically finding that he had been in possession of the property "more than 5 years prior to the filing" of the action, holding same "adversely to the defendants", and, "in addition to the other issues" found in plaintiff's favor, "that said defendants are barred from asserting title by reason of such Statute of Limitations." This portion of the journal entry of the trial court's judgment obviously has reference to the five-year limitation period prescribed for the "recovery of real property sold for taxes * * * after the date of the recording of the tax deed" prescribed by subsection (3) of Tit. 12 O.S.1951 § 93. This Court has, in several recent cases, rejected as barred by said limitation, attacks made upon tax deeds later than five years after their recording, notwithstanding their asserted invalidity, as contemplated in subsection (6) of said section. See Blakely v.

McCrory, Okl., 274 Pa.2d 1013, and McCasland v. Parrish, Okl., 266 P.2d 450, and the cases cited therein.

■ In their appeal from said judgment, defendants make no effort to point out in what way the trial court's judgment was contrary to law or to the evidence on the second part of their hereinbefore related trial court position that plaintiff's possession during more than the five years prescribed by the above-cited statute was not "adverse". But, they urge that the fifteen year statute (prescribed by subsection (4), rather than the five year statute (prescribed by subsection (3), should apply to a situation like the present one, where, as their counsel now represents, they had "paid their taxes to the county treasurer prior to the time the county commissioners sold the property on August 1, 1945." This partially quoted statement is followed by the following supplemental representation: "At the time this land was sold to the purchaser in 1945, all the taxes had been paid (with the exception of 1930, 1931 and 1932, which may or may not have been paid prior to 1945)." This statement does not precisely coincide with the facts the same attorney represented and dictated into the record at the trial as follows:

"Let the record show that Jewell Jackson has tax receipts and paid taxes on the West 28 acres of Lot 4, sec. 31, Twp. 2 North, Range 18 East, for the years 1926, 1927, 1928, on the 21st of March, 1939. Let the record further show that R. F. Jackson paid the taxes on the West 18.22 acres of Lot 4, and the West 8 acres of the East Half of Lot 4, Sec. 31–2N–19E, for the years 1930–31–32 and that the taxes were paid to the Pushmataha County Treasurer on the 13th of February, 1947." (Emphasis ours.)

Accepting the above quoted statement as a true representation of the facts (and there is no evidence or statement in the record to challenge it) it is clear that no taxes were paid on behalf of any of the defendants until almost nine years after the re-sale to the county, and that no taxes for any

years subsequent to the year of said re-sale were paid for them until more than a year after plaintiff's predecessor obtained his deed from the county. If the defendant, Jewell Jackson, or his father and predecessor in title, R. F. Jackson, had desired to redeem the land from the re-sale, they should have taken the proper steps to do so "on or before December 31, 1933," as authorized by Senate Bill No. 214, enacted by the Fourteenth Legislature, Tit. 68 O.S. 1951 § 430. Defendants' position differs materially from that of an owner who has made a *timely and bona fide* effort to pay all taxes *then due* on his property but fails through no fault of his own. See Young v. Fisher, 204 Okl. 632, 233 P.2d 285, and cases cited therein.

■ It is rather difficult to follow, or attempt to apply to the facts of this case, the argument under part II of defendants' brief. This argument seems to be to the effect that plaintiff's predecessor in title, Pushmataha County, lost whatever right or title it had in the land because of the approximately fifteen years that elapsed from the time of its re-sale in 1930 until its sale by the County to plaintiff's brother, J. L. Allen. This argument is based upon the asserted fact that the Jackson heirs were in adverse possession to the County during that period. We find no evidence to support this statement, or the contention that said heirs exercised control over the property during said period, unless it might be said that the hereinbefore described tax payment made by Jewell Jackson in 1939, constituted such evidence. He testified, as hereinbefore indicated, that he had resided near Wewoka, in Seminole County, "about 40 years." The evidence fails to affirmatively establish that he or his father, R. F. Jackson, was ever in actual or constructive possession of the property. In the absence of any proof that they ever exercised any control over the property, either by themselves or through some agent or tenant, the 1939 tax payment is wholly insufficient of itself to establish adverse possession by defendants during that long period, or to demonstrate that the trial court's judgment is contrary to the evidence or to law.

As we have found no cause for reversal in the arguments advanced by defendants, the judgment of the trial court is hereby affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, HALLEY and JACKSON, JJ., concur.